**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LA SHAWN GOLDEN for
N.B. (Minor Child),

Plaintiff,

vs. Case No. 8:14-cv-1804-T-27JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.
_____________________________________/

**REPORT AND RECOMMENDATION**[1]

**I. Status**

La Shawn Golden, on behalf of her minor child, N.B., is appealing the Commissioner of the Social Security Administration's final decision denying a claim for child's supplemental security income ("SSI") under the Social Security Act. For purposes of this Report and Recommendation, the designation "Claimant" refers to the minor child, N.B., who was an "older infant" when the claim was filed, and the designation "Plaintiff" refers to the mother, La Shawn Golden. Claimant's alleged disability is a result of being "hyperactive" and "aggress[ive]," as well as various "behavioral" problems, "allerg[ies,]" and "asthma[.]" Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed October 24, 2014, at 123 (some capitalization omitted). On April 27, 2011, Plaintiff filed

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen (14) days after service of this document. Failure to file timely objections waives a party's right to de novo review. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a); see also Dupree v. Warden, 715 F.3d 1295, 1300 (11th Cir. 2013).

an application for SSI on behalf of Claimant, who was born on March 26, 2007 and alleged to have been disabled as of August 1, 2008. Tr. at 93-99. The application was denied initially on June 3, 2011, see Tr. at 42, 45, 46-51, and was denied upon reconsideration on August 24, 2011, see Tr. at 43-44, 54, 55-60.[2] An Administrative Law Judge ("ALJ") then held a hearing on February 26, 2013, during which he heard testimony from Plaintiff, who was represented by counsel. Tr. at 30-41; see Tr. at 61 (Appointment of Representative form). On March 18, 2013, the ALJ issued a Decision finding Claimant not disabled "since January 12, 2011" (the protective filing date, see Tr. at 11, 114). Tr. at 11-25. On June 12, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On July 25, 2014, Plaintiff commenced this action on behalf of Claimant under 42 U.S.C. § 1383(c)(3), by the timely filing of the Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. The available administrative remedies have been exhausted, and the case is properly before the Court.

Plaintiff raises four issues on appeal: 1) whether the ALJ erred in failing to state the weight assigned to the opinion of a treating psychiatrist; 2) whether the ALJ erred in determining that Claimant does not meet Listing 112.11, of the Listings set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1 ("Listing(s)"); 3) whether the ALJ erred in finding that Claimant does not functionally equal the severity of a Listing; and 4) whether the ALJ erred in evaluating the testimony of Plaintiff (Claimant's mother) about how Claimant's impairments affect Claimant. See Memorandum of Law (Doc. No. 16; "Pl.'s Mem."), filed January 8,

[2] The internal disability determination and transmittal form reflects that the determination was made on August 22, 2011, see Tr. at 43, but the notice was not sent until August 24, 2011, see Tr. at 55.

2015, at 1-3 (issue I), 3-5 (issue II), 5-6 (issue III), 6-7 (issue IV). On March 9, 2015, Defendant filed a responsive memorandum. See Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem."). Upon a thorough review of the parties' arguments and the administrative transcript, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The Disability Evaluation Process for Children

An individual "under the age of 18 [is] consider[ed] . . . disabled if [the individual] ha[s] a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; see 42 U.S.C. § 1382c(a)(3)(C)(i). When determining whether an individual under the age of eighteen is disabled, an ALJ must follow the three-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; and (3) the impairment(s) meet, medically equal, or functionally equal any of the impairments set forth in the Listings. 20 C.F.R. § 416.924; see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278-79 (11th Cir. 2004) (explaining the three-step sequential evaluation process for children); T.R.C. v. Comm'r, Soc. Sec. Admin., 553 F. App'x 914, 918 (11th Cir. 2014) (unpublished); Turberville v. Astrue, 316 F. App'x 891, 892 (11th Cir. 2009) (unpublished).

With respect to the analysis conducted at step three, an ALJ considers the combined effect of all medically determined impairments, even those that are not severe. 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c). The ALJ then looks to "objective criteria set forth in [the Regulations]" to determine whether the impairment(s) cause severe and marked limitations. Shinn, 391 F.3d at 1278; see also Jackson v. Astrue, 734 F. Supp. 2d 1343, 1357 (N.D. Ga. 2010). The Regulations contain the Listings "specifying almost every sort of [impairment] from which a person can suffer, sorted into general categories." Shinn, 391 F.3d at 1278 (citing 20 C.F.R. § 416.925(a)). Each listed impairment contains a discussion of the different limitations on the child's abilities that the impairment may impose. Id. (citing 20 C.F.R. § 416.925(a)). Limitations appearing in the Listings "are considered 'marked and severe.'" Id. (citing 20 C.F.R. § 416.925(a)).

Limitations resulting from a child's impairment(s) meet "the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment." Id. Limitations resulting from a child's impairments medically equal "the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'" Id. (quoting 20 C.F.R. § 416.926(a)(2)).

Even if the child's limitations do not medically equal the Listings, "the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings." Id. To make that determination, "the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities," using "six major domains of life[.]" Id. Those domains are:

(i) Acquiring and using information;
(ii) Attending and completing tasks;

(iii) Interacting and relating with others;
(iv) Moving about and manipulating objects;
(v) Caring for [one]self; and,
(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1); see also T.R.C., 553 F. App'x at 918 (citation omitted). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked limitations in two of the domains [above], or an extreme limitation in one domain.'" Shinn, 391 F.3d at 1279 (alteration in original) (quoting 20 C.F.R. § 416.926a(d) and citing 20 C.F.R. § 416.925(a)).

## III. The ALJ's Decision

The ALJ followed the required three-step sequential evaluation process for children set forth in 20 C.F.R. § 416.924. Tr. at 14-24. After recognizing Claimant "was an older infant on January 12, 2011, the date the application was filed, and [was] a preschooler [at the time of the Decision]," the ALJ determined at step one that Claimant had not engaged in substantial gainful activity at any time relevant to the Decision. Tr. at 14 (emphasis and citation omitted). Next, at step two, the ALJ found Claimant suffers from "the following severe impairments: attention deficit hyperactivity disorder [("ADHD")]; oppositional defiant disorder [("ODD")]; and asthma." Tr. at 14 (emphasis and citation omitted).

In terms of the six major domains of life, the ALJ found as follows: "[C]laimant has less than marked limitation in acquiring and using information," Tr. at 18 (emphasis omitted); "[C]laimant has less than marked limitation in attending and completing tasks," Tr. at 19 (emphasis omitted); "[C]laimant has marked limitation in interacting and relating with others,"

Tr. at 20 (emphasis omitted); "[C]laimant has no limitation in moving about and manipulating objects," Tr. at 22 (emphasis omitted); "[C]laimant has less than marked limitation in the ability to care for herself," Tr. at 23 (emphasis omitted); and "[C]laimant has less than marked limitation in health and physical well-being," Tr. at 24 (emphasis omitted). At step three, the ALJ found Claimant does not have an impairment or combination of impairments that meet, medically equal, or functionally equal any of the Listings. Tr. at 14. Accordingly, the ALJ concluded Claimant was not disabled "since January 12, 2011, the date the application was filed." Tr. at 24.

## IV. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077,

1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## V. Discussion

As noted above, Plaintiff raises four issues on appeal. The issues are discussed in turn.

### A. Opinion of Treating Psychiatrist

Plaintiff contends the ALJ erred in failing to state the weight assigned to the opinion of Craig Kunins, M.D., Claimant's treating psychiatrist at Sequel Care of Florida.[3] Pl.'s Mem. at 2-3. Plaintiff points out that even though the ALJ failed to assign weight to Dr. Kunins' opinion, the ALJ did assign "moderate weight" to the opinions of several non-examining state agency doctors on the same or similar impairments about which Dr. Kunins opined. Id. at 1. Defendant concedes that "the ALJ did not expressly assign weight to Dr. Kunins' opinions[.]" Def.'s Mem. at 13. Defendant argues, however, that "the ALJ's [D]ecision shows he considered [Claimant's] condition as a whole, and [the ALJ's] assessment of

---

[3] In addition to challenging the weight assigned to Dr. Kunins' opinion, Plaintiff passively references unspecified other "medical evidence of record" to which the ALJ allegedly failed to assign weight. Pl.'s Mem. at 1. The Scheduling Order entered in the case (Doc. No. 13) required Plaintiff to "identify with particularity the grounds upon which the administrative decision is being challenged" and directed that "challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards." It also warned that "[a]ny contention for which these requirements are not met is subject to being disregarded for insufficient development." The Court need not "consider an issue raised only in passing or in a way that eschews legal argument or authority." Buttram v. Soc. Sec. Admin., Comm'r, 594 F. App'x 569, 572 (11th Cir. 2014) (unpublished) (citing Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) (stating that "[w]e have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority")). In sum, the Court does not have a duty to scour the administrative transcript to find the unspecified other medical evidence and determine whether the ALJ properly weighed it.

[Claimant's] level of functioning in the six domains was consistent with Dr. Kunins' treatment notes and his opinions reflected in his Sequel Care records." Id.

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[5] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not

constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, the administrative transcript reflects that Dr. Kunins treated Claimant's ADHD and ODD from April 6, 2011 to December 20, 2012. Tr. at 270, 288. During that time span, Claimant saw Dr. Kunins regularly. See Tr. at 270-75, 288-301. After each visit, Dr. Kunins made a note that includes the assessment, observations, and a treatment plan. See Tr. at 273-75, 288-93, 297-301.

Also, on two occasions, April 6, 2011 and April 18, 2012, Dr. Kunins, together with a counselor, authored detailed treatment plans. Tr. at 270-72, 294-96. Among other things,

the treatment plans document Claimant's symptoms. Both plans list "severe" symptoms in the areas of "manipulative/demanding/tantrums"; "defiant/destructive/aggressive"; "impaired attention/concentration"; "lack of insight/impaired judgment"; and "irritable/agitated/ inappropriate anger[.]" Tr. at 270, 294 (some capitalization omitted). The plans list "moderate" symptoms in the areas of "learning/academic/school problems" and "unstable/labile/elated" mood. Tr. at 270, 294 (some capitalization omitted). Finally, the plans list "mild" symptoms in the areas of "socially isolated/withdrawn"; "perfectionist/controlling/rigid"; "depressed/loss of interest/hopeless/helplessness" mood; "anxious/worried/fearful/obsessive/compulsive" mood; and familial "domestic violence/criminal behavior[.]" Tr. at 270, 294 (some capitalization omitted). Additionally, both plans document Claimant's Global Assessment of Functioning ("GAF") scores[6]: 55 on April 6, 2011; and 60 on April 18, 2012.[7] Tr. at 270, 294.

Initially, Dr. Kunins did not prescribe any medications because of Claimant's age. Tr. at 271, 275. Instead, the plan was for Claimant "to work with a therapist[.]" Tr. at 275. By June 30, 2011, Claimant's parents reported that Claimant was "'way too hyper,' . . . angry, destructive, and aggressive." Tr. at 301 (purportedly quoting parents). Additionally, the parents reported that Claimant was biting and fighting with other children. Tr. at 301. Dr. Kunins decided to prescribe a "trial of low dose tenex," as well as "continued therapeutic

---

6 The form used for the plans actually uses the term "Axis V," Tr. at 270, 294, but it is evident that the numbers written next to that term are GAF scores.

7 "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social and occupational functioning.'" Lacina v. Comm'r, Soc. Sec. Admin., ___ F. App'x ___, 2015 WL 1453364, at *2 n.2 (11th Cir. Apr. 1, 2015) (unpublished) (quoting American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 1994) (DSM-IV)). "A score between 51 and 60 indicates moderate symptoms, such as occasional panic attacks or moderate difficulty in social, occupational or school functioning." Id. (citing DSM-IV at 32).

support from Sequel Care." Tr. at 301. Over time, Claimant's behavior improved while she was taking tenex. Tr. at 288-300.

The ALJ, in discussing the various medical opinions of record, did not specifically refer to or assign weight to Dr. Kunins' notes and opinions. See Tr. at 16. The ALJ did, however, discuss the notes in the sections of his Decision that addressed two of the six major domains of life: attending and completing tasks; and interacting and relating to others. Tr. at 19-21. Specifically, in the section regarding attending and completing tasks, the ALJ stated:

> In a review of the treatment notes from SequelCare of Florida, the undersigned notes that [C]laimant began treatment without medication and received [GAF] scores of 55. After treatment that includes taking Tenex, the most recent treatment notes on December 20, 2012, describe [C]laimant as "doing well both [at] home and in school," and she received a GAF score of 60.

Tr. at 19 (quoting Tr. at 288,[8] other citations omitted). Based upon this and other evidence of record, the ALJ assigned less than marked limitation in this domain. Tr. at 19. Then, in the section regarding interacting and relating with others, the ALJ stated:

> In a thorough review of the treatment record from SequelCare of Florida, the undersigned notes that [C]laimant's parents often complained of impulse control, irritability, excessive talking, temper tantrums and other symptoms. However, the treatment notes repeatedly describe [C]laimant during visits as "cute and pleasant." The most recent treatment note from SequelCare on December 20, 2012 describes her mood as "good," and her overall presentation as "cute and pleasant." Treatment notes such as the one on December 20, 2012 suggest [] the effectiveness of medication such as Tenex in controlling the symptoms of [C]laimant's mental impairments.

[8] In quoting the December 20, 2012 treatment note, the ALJ cites "Exhibit 6F" to which the quote is attributable. The ALJ also cites Exhibit 6F on a number of other occasions throughout the Decision. Quite a few of Dr. Kunins' notes are included in Exhibit 6F; the undersigned cites the specific page(s) in the administrative transcript to which it appears the ALJ referred.

Tr. at 20-21 (quoting 273, 288, 289, 290, 291, 297, 298, 299, 300, 301, other citations omitted). Based on this and other evidence of record, the ALJ assigned marked limitation in this domain. Tr. at 20-21.

Although the ALJ did not specifically assign weight to Dr. Kunins' notes and opinions, it is clear that he gave them great weight. Indeed, the ALJ's findings are consistent with Dr. Kunins' observations and his opinions regarding Claimant's symptoms and the effectiveness of the medication in controlling Claimant's symptoms.[9] On this record, the undersigned finds that the ALJ's failure to specifically assign weight to Dr. Kunins' notes and opinions did not affect his ultimate findings and is therefore harmless. See, e.g., Tillman v. Comm'r, Soc. Sec. Admin., 559 F. App'x 975, 975-76 (11th Cir. 2014) (finding an ALJ's "failure to specifically reference the opinions of [two treating physicians] . . . did not affect the result").

**B. Listing 112.11**

Plaintiff argues the ALJ erred in determining that Claimant does not meet Listing 112.11, which addresses ADHD. Pl.'s Mem. at 3-5.

The burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations

---

[9] Even Plaintiff recognizes within a different argument in her memorandum that "[t]he ALJ obviously . . . utilize[d] some of what Dr. Kunins stated . . . in that he found that there was a marked limitation with regard to impulsivity." Pl.'s Mem. at 3.

and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

Relevant to Plaintiff's argument, Listing 112.11 requires:

> A. Medically documented findings of all three of the following:
> 1. Marked inattention; and
> 2. Marked impulsiveness; and
> 3. Marked hyperactivity;
>
> AND
>
> B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Listing 112.11. As to the appropriate age-group criteria referenced, Listing 112.02 provides:

> B. Select the appropriate age group to evaluate the severity of the impairment:
>
> 1. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the following:
>
> a. Gross or fine motor development at a level generally acquired by children no more than one-half the child's chronological age, documented by:
>
> (1) An appropriate standardized test; or
> (2) Other medical findings (see 112.00C); or
>
> b. Cognitive/communicative function at a level generally acquired by children no more than one-half the child's chronological age, documented by:
>
> (1) An appropriate standardized test; or
> (2) Other medical findings of equivalent cognitive/communicative abnormality, such as the inability to use simple verbal or nonverbal behavior to communicate basic needs or concepts; or
>
> c. Social function at a level generally acquired by children no more than one-half the child's chronological age, documented by:
>
> (1) An appropriate standardized test; or

> (2) Other medical findings of an equivalent abnormality of social functioning, exemplified by serious inability to achieve age-appropriate autonomy as manifested by excessive clinging or extreme separation anxiety; or
>
> d. Attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in two or more areas covered by a., b., or c., as measured by an appropriate standardized test or other appropriate medical findings.
>
> 2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
>
> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
>
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
>
> d. Marked difficulties in maintaining concentration, persistence, or pace.

Listing 112.02.

Plaintiff contends that Section A of Listing 112.11 is met because: 1) Dr. Kunins stated in the April 2012 treatment plan that Claimant had severely impaired attention and concentration; 2) one of Claimant's teachers reported various problems that equate to the other criteria set forth in Section A; and 3) Claimant's mother corroborated what the teacher reported. Pl.'s Mem. at 3-4 (citing Tr. at 35-37, 39, 218, 294). Yet, as Defendant points out,

see Def.'s Mem. at 5-6, even if Dr. Kunins' plan can be construed as imposing marked inattention, Plaintiff has failed to cite any medically documented evidence of the other two requirements of Section A: marked impulsiveness and marked hyperactivity. In sum, Section A is not met.

Although the foregoing finding is dispositive of the issue because both Sections A and B must be met, the undersigned addresses Plaintiff's contention that Section B is met because "there should be a finding of marked problem with socialization[.]" Pl.'s Mem. at 5. Plaintiff appears to be referring to Listing 112.02(B), which the Listing at issue incorporates by reference in Section B. Section (B)(2)(b) of Listing 112.02 requires: "Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests."[10] Again, other than pointing to unspecified "evidence from Dr. Kunins," Plaintiff offers no medical findings that support the contention that Claimant suffers from marked impairments in this area, Pl.'s Mem. at 5, and there are no standardized test results in the administrative transcript.

---

[10] As set forth above, a claimant must meet 2 of 4 criteria set forth in Listing 112.02(B)(2). It is not entirely clear which other criteria Plaintiff contends that Claimant meets, see Pl.'s Mem. at 5, but the undersigned assumes it is Section (B)(2)(d): marked difficulties in maintaining concentration, persistence, or pace.

In sum, Plaintiff failed to meet her burden at the administrative level of proving that Claimant meets Listing 112.11, and the ALJ did not err in determining that Claimant does not meet a Listing.[11]

**C. Functional Equivalent of Meeting a Listing**

Plaintiff next contends the ALJ erred in determining that Claimant does not functionally equal the Listings. Pl.'s Mem. at 5. Plaintiff specifically argues that Claimant should have been found to be markedly impaired in the domain of attending and completing tasks. Id. Plaintiff again points to Dr. Kunins' diagnosis of ADHD; the kindergarten teacher's report that Claimant "is easily distracted, repeatedly becomes sidetracked by getting up out of her seat and frequently interrupting others as well as requiring extra supervision because of her conduct"; and Plaintiff's (the mother's) testimony. Id. at 6 (citing Tr. at 218).

The ALJ, in finding that Claimant "has less than marked limitation in attending and completing tasks," discussed the relevant evidence in detail. Tr. at 19. The ALJ accurately summarized Plaintiff's testimony on the subject, discussed the very kindergarten teacher's report to which Plaintiff now points, discussed Dr. Kunins' treatment notes, discussed other teachers' evaluation reports, and discussed the "Childhood Disability Evaluation Forms" containing the findings of two non-examining state agency consultants. Tr. at 19 (citations omitted). Specifically with regard to the kindergarten teacher's report, the ALJ accurately

---

[11] Plaintiff mentions that the ALJ "d[id] not give much explanation as to why he reject[ed]" the contention that Claimant meets a Listing. Pl.'s Mem. at 3. The ALJ, however, explicitly found that Claimant does not meet or equal a Listing. Tr. at 14. This is all that is required. See Wilson, 284 F.3d at 1224-25 (an ALJ's finding that a plaintiff's impairments did not meet or medically equal any Listing was sufficient evidence that the ALJ considered the Listings). Further, the ALJ obviously considered Claimant's ADHD at length because he found it to be a severe impairment, Tr. at 14, and discussed, in detail, the evidence related to it, Tr. at 15-24.

noted that Claimant was reported to be "'average' in terms of homework completion"; Claimant "only 'occasionally' makes careless mistakes in schoolwork; has occasional difficulty sustaining attention; and has occasional difficulty following through on instructions and finishing homework." Tr. at 19 (quoting Tr. at 218-19). The ALJ also addressed Dr. Kunins' last notation that Claimant was "'doing well both at home and in school.'" Tr. at 19 (quoting Tr. at 288). In sum, the ALJ's finding as to this domain is well supported and need not be disturbed.

**D. Plaintiff's Testimony**

Plaintiff last argues that the ALJ erred in discrediting her (Claimant's mother) because he "offer[ed] nothing as to why he f[ound] the child's mother to not be credible." Pl.'s Mem. at 7. According to Plaintiff, "[t]he only evidence that the ALJ . . . offer[ed] with regard to [his credibility finding] is the acceptance of the opinions of two . . . non-examining State Agency doctors." Id.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, both parties agree that the above pain standard applies, see Pl.'s Mem. at 7; Def.'s Mem. at 17, with the obvious distinction that the ALJ evaluated the testimony of Claimant's mother (Plaintiff) about how Claimant's impairments affect Claimant.

The ALJ summarized Plaintiff's testimony, Tr. at 15-16, before finding that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [according to the ALJ, Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained below." Tr. at 16. The ALJ went on to discuss the opinions of the two non-examining state agency doctors, Tr. at 16, and to discuss Plaintiff's testimony and all of the other evidence of record as it relates to the six functional equivalence domains, Tr. at 18-24.

A review of this detailed discussion convinces the undersigned that the ALJ adequately considered the relevant credibility factors, and the ALJ's determination in this regard is supported by substantial evidence in the record.

## VI. Conclusion

A review of the entire administrative transcript indicates the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**RECOMMENDED**:

1. That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision; and

2. That the Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on July 27, 2015.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Hon. James D. Whittemore
United States District Judge

Counsel of Record